UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.

| | |
|---|---|
| JUAN J. VAZQUEZ-BERNAL,<br><br>Plaintiff,<br><br>v.<br><br>THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY D/B/A ATRIUM HEALTH,<br><br>Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Juan J. Vazquez-Bernal ("Plaintiff" or "Vazquez-Bernal") brings this action against Defendant The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health, ("Defendant") for violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*; Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.§ 12101, *et seq*.; and wrongful discharge in violation of public policy under N.C. Gen. Stat. § 143-422.1, and alleges the following:

## PARTIES

1. Plaintiff is a resident of Huntersville, North Carolina.

2. Defendant is a company registered to conduct business in the state of North Carolina, with their principal office located at 1000 Blythe Boulevard, Charlotte, North Carolina 28203.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims under FMLA and ADA because the claims arise under the laws of the United States.

4. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the federal claims. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties

5. This Court has personal jurisdiction over Defendant because Defendant has a place of business located in Charlotte, North Carolina, which is located within this judicial district.

6. At all relevant times, Defendant was, and is, an "employer" within the definition of FMLA, 29 U.S.C. § 2611(4)(A) on the basis that it employs more than 50 employees.

7. At all relevant times, Plaintiff was an "eligible employee" within the definition of FMLA, 29 U.S.C. § 2611(2)(A), on the basis that Defendant employed Plaintiff for at least 12 months, and Plaintiff performed at least 1,250 hours of service for Defendant.

8. At all relevant times, Defendant was an "employer" within the definition of ADA, 42 U.S.C. § 12101, *et seq*. (specifically, 42 U.S.C. § 12111) on the basis that it employs more than 15 employees.

9. At all relevant times, Plaintiff was an "employee" of Defendant within the definition of ADA, 42 U.S.C. § 12111.

10. At all times relevant to this action, Defendant possessed and exercised the power and authority to direct, control and supervise the work performed by Plaintiff.

11. Venue is also proper in this District under 28 U.S.C. § 1391 because Plaintiff was hired to work in this district and Defendant conducts business in this district.

## ADMINISTRATIVE EXHAUSTION

12. Plaintiff satisfied his obligation to exhaust his administrative remedies by timely filing a Charge of Discrimination on July 14, 2025 against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation.

13. The EEOC issued a Notice of Right to Sue on February 12, 2026. Plaintiff timely brings this action within ninety (90) days of his receipt thereof.

## GENERAL ALLEGATIONS

14. On or about January 21, 2019, Plaintiff was hired by Defendant as a Language Access Interpreter.

15. On or about May 22, 2020, Plaintiff was promoted to Language Access Coordinator.

16. On or about May 5, 2021, Plaintiff's role changed to Certified Healthcare Interpreter.

17. On or about June 5, 2024, Plaintiff filed a complaint against his manager, Alex Zambrano ("Zambrano"), regarding retaliation and breaking of Atrium Policy. The complaint was filed with Tonya Revels ("Revels"), Director of Human Resources.

18. On or about June 24, 2024, Plaintiff followed up with Human Resources and provided a summary of Zambrano's repeated offenses and continuous retaliation against Plaintiff. Such offenses included: lack of management presence at the Language Access team office, favoritism and inconsistencies of following polices, Zambrano "double dipping" as he worked multiple jobs and was not present in his own department, making comments that

constitute sexual harassment, conflicts of interest, HIPAA violations, and violations of the meal and break policy.

19. In or about July of 2024, Revels informed Plaintiff that she spoke to Zambrano regarding the allegations in his complaint.

20. On or about August 9, 2024, Revels sent a letter to Plaintiff stating an investigation into his complaint had been conducted, and Defendant was taking appropriate action to address the issue Plaintiff raised.

21. In the following months, Zambrano continued to disengage with Plaintiff, excluded Plaintiff from department leadership meetings, and did not allow Plaintiff to contribute feedback during all-staff meetings.

22. In or about February 2025, Plaintiff had his annual performance review with Zambrano, who stated Plaintiff was performing exceptionally well and that he would receive his annual raise. Zambrano told Plaintiff to continue doing his exceptional work.

23. On or about March 4, 2025, Zambrano accused Plaintiff loudly and in front of an audience of calling another hospital to ask about Zambrano's whereabouts. Such allegations were false. Plaintiff reached out to Revels regarding this incident and to add it to his complaints against Zambrano.

24. On or about March 25, 2025, Plaintiff had a meeting with Danilo Formolo ("Formolo"), Assistant Vice President, Human Resources/ Language Access, and Michelle Rowe ("Rowe"), Senior Teammate Relations Advisor. Plaintiff was under the impression that this meeting was to follow up on his complaints about Zambrano. Instead, Plaintiff was falsely accused of hugging teammates, showing favoritism to certain teammates, and demanding hugs

4

from teammates. Plaintiff firmly denied such allegations and stated that he felt that this was retaliation for filing his complaints against Zambrano.

25. At the end of the meeting, Formolo informed Plaintiff that he was being placed on paid administrative leave, effective immediately. Formolo also stated he felt what Defendant was doing to Plaintiff was wrong and that Defendant was allowing Zambrano to get away with his misconduct.

26. Prior to this incident, Plaintiff did not have any prior disciplinary action or complaints against him or performance issues.

27. On or about March 26, 2025, Plaintiff sought medical treatment as he began to experience anxiety and a decline in his mental health.

28. On or about April 1, 2025, Plaintiff's medical provider provided support for a 3-week continuous FMLA leave effective April 2, 2025. That same day, Plaintiff submitted a request for FMLA leave to Defendant's Human Resources.

29. On or about April 10, 2025, all of Plaintiff's FMLA paperwork from his provider was faxed to Defendant's Human Resources.

30. On or about April 11, 2025, Plaintiff received a call from Debra Petitti ("Petitti") in Human Resources. Petitti asked about the retaliation claims that Plaintiff had filed. Plaintiff informed Petitti that he was currently on FMLA leave. Petitti told Plaintiff that he was on paid administrative leave and that he had to answer her calls.

31. On or about April 11, 2025, Plaintiff informed Petitti that he was not receiving pay as of April 2, 2025. Petitti told Plaintiff that she would make that correction. Plaintiff referred her to Revels about his retaliation complaint as she had all of the information.

32. On or about April 21, 2025, Plaintiff called Defendant's Human Resources to inquire about the status of his FMLA leave. Plaintiff was told that his FMLA paperwork was missing information on Section C. Because of this error, Plaintiff was sent a denial letter.

33. That same day, Plaintiff contacted his medical provider, who then sent him a copy of the paperwork that was faxed to Defendant. Upon review, the paperwork was filled out completely, including Section C.

34. On or about April 21, 2025, shortly after the denial letter was sent, Plaintiff received an email from Rowe and Formolo informing Plaintiff that his employment was terminated by Defendant based on his alleged violation of Defendant's discrimination, harassment, and retaliation policy.

35. On or about April 23, 2025, Plaintiff sent an email to Revels contesting his termination and stating his termination was in retaliation for his applying for FMLA leave.

36. On or about May 5, 2025, Plaintiff received a letter from Defendant stating he was approved for FMLA leave from April 2, 2025, through June 24, 2025. He was denied leave from June 24, 2025 through July 1, 2025 due to exhaustion of his FMLA leave.

37. On or about May 6, 2025, Plaintiff received an email from Defendant with updated FMLA leave approval dates of April 2, 2025 through April 21, 2025, the date of his termination.

38. Defendant knew Plaintiff was entitled to receive FMLA leave and had interfered with his ability to do so.

39. Defendant failed to provide Plaintiff with notice of his eligibility and rights as required by the FMLA, including the individualized notice of his job protection rights.

40. Immediately following Plaintiff's FMLA leave notification, Plaintiff faced retaliation from Defendant, wherein his employment was terminated within approximately three weeks after providing such FMLA leave notice.

41. Defendant interfered with Plaintiff's FMLA rights by failing to provide him with notice that he was entitled to said FMLA leave based on the qualifying event of which Defendant was aware.

42. At all times, Plaintiff clearly communicated to Defendant that he wanted to return to work after his medical leave ended, as he only requested such leave through July 1, 2025.

43. Plaintiff therefore believes and avers that Defendant discriminated against him and terminated him due to his disability, and for requesting FMLA leave.

## COUNT I

### Violation of FMLA – Interference

44. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

45. Defendant was aware that Plaintiff had suffered a qualifying event under FMLA.

46. Defendant prevented Plaintiff from taking his lawfully permitted FMLA leave under 29 U.S.C. § 2612(a)(1)(D) due to his anxiety and mental health conditions.

47. Defendant retaliated against Plaintiff for taking his lawfully permitted FMLA leave under 29 U.S.C. § 2612(a)(1)(D) due to his anxiety and mental health conditions.

48. Defendant denied, interfered with, and restrained Plaintiff from the lawful exercise of his substantive rights provided under the FMLA including, but not limited to, failing to provide the required individual FMLA notices to him and thereby preventing him from making informed decisions about his leave.

49. Plaintiff was automatically prejudiced by the lack of required individualized notice. He was further prejudiced because his job was not held open for him as required by the

FMLA, and he was ultimately terminated. Plaintiff has thus suffered damages because of Defendant's unlawful conduct.

50. Defendant's violation of the FMLA, 29 U.S.C. § 2615(a)(1), by interfering with Plaintiff's lawful exercise of his rights under FMLA, was willful and/or lacking of good faith.

## COUNT II

### Violation of Americans with Disabilities Act of 1990, as Amended
### 42 U.S.C.§ 12101, *et seq*.

51. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

52. At all relevant times, Plaintiff was a qualified individual with an actual or perceived disability.

53. Prior to Plaintiff's diagnosis of anxiety and mental health conditions and his request for accommodation, Plaintiff was performing his job at a level that met his employer's legitimate expectations.

54. Plaintiff notified Defendant of his anxiety and mental health conditions, and how it required him to take medical leave as an accommodation.

55. On or about April 1, 2025, Plaintiff submitted an accommodation request to Defendant, specifically requesting medical leave due to his anxiety and mental health conditions.

56. While it appears that Defendant did reasonably accommodate Plaintiff's disability by approving his accommodation request for medical leave (after initially denying it due to allege incomplete forms), Defendant punished Plaintiff for seeking a reasonable accommodation by terminating his employment while his request for leave was pending, and not approving such leave request until <u>after</u> his employment was terminated and making it retroactive until the date of his termination.

57. Defendant violated the ADA by terminating Plaintiff based on an actual or perceived disability in violation of 42 U.S.C. § 12112(a).

58. The punitive actions by Defendant towards Plaintiff occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation without a legitimate business reason.

59. Plaintiff is entitled to his attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

60. Plaintiff is further entitled to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

## COUNT III

### Wrongful Discharge in Violation of Public Policy

61. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

62. Defendant employed at least fifteen (15) employees at all relevant times.

63. Defendant violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1, et seq. by terminating Plaintiff because of an actual or perceived disability and/or because Plaintiff engaged in the protected activity of requesting medical leave as an accommodation for his disability.

64. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

65. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

66. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

1. An Order awarding Plaintiff damages for Defendants' violation of the FMLA, including backpay, lost wages, employment benefits, liquidated damages and any other compensation denied or lost because of Defendant's violation of the FMLA;

2. An Order awarding Plaintiff damages for Defendants' violation of the ADA, including backpay, lost wages, employment benefits, liquidated damages and any other compensation denied or lost because of Defendant's violation of the ADA;

3. An Order awarding Plaintiff compensatory damages for emotional distress, pain and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

4. An Order awarding Plaintiff punitive damages under N.C. Gen. Stat. § 1D-115 in an amount to be proven at trial;

5. An Order awarding Plaintiff the costs of this action;

6. An Order awarding Plaintiff reasonable attorneys' fees;

7. An Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

8. An Order granting any other necessary or appropriate relief to which Plaintiff is entitled under the law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.


                                                  */s/ L. Michelle Gessner*
                                                  L. Michelle Gessner, NCSB#26590
                                                  GESSNER LAW, PLLC
                                                  6146 Rea Road STE B7, Box #77126
                                                  Charlotte, NC 28277
                                                  Tel: (704) 234-7442
                                                  Fax: (980) 206-0286
                                                  Email: michelle@mgessnerlaw.com